# Arlington Seating Company v. New Philadelphia School District

*H. O. Bechtel*, for plaintiff; *L. C. Scott* and *E. W. Downey*, for defendant.

HOUCK, J., January 1, 1934.—On March 27, 1933, on plaintiff's petition, a writ of mandamus execution issued to the school directors and treasurer of the school district, hereinafter called respondents, to collect a judgment of $3,350. At the time, there were no unappropriated funds in the treasury. On May 1, 1933, on plaintiff's petition for a writ of mandamus execution, the court directed respondents to pay the amount of the judgment out of the first funds received by the school district. The judgment was not paid, and on October 23, 1933, plaintiff took a rule on respondents to show cause why they should not be adjudged in contempt of court for failure to comply with the order of May 1, 1933. Respondents filed an answer to the petition on which the rule was granted, and the matter was argued. No depositions were taken, nor was any replication filed. Consequently, the facts must be gleaned from the petition and answer.

It is admitted that the order made on May 1, 1933, was served upon respondents prior to the making of the budget for the school term of 1933-34. It is averred in the answer that there was no unappropriated money in the treasury of the school district when the present rule was served on respondents and that no unappropriated money has come into the possession of the school district since that time. It is further averred that the school directors levied the maximum legal amount of taxes for the school term of 1933-34, which will produce approximately $28,000, which will be insufficient to pay the current expenses of keeping the schools open and to make required payments on bonded indebtedness. It further appears from the answer that there are judgments of record against the school district amounting to $79,471.97, on some of which mandamus execution has issued; that there are claims pending for unpaid salaries of school teachers, janitors, and officers amounting to $8,584.92; and that there is a temporary loan due of $30,000. Respondents also aver that they are not responsible for the present financial condition of the school district, but that their predecessors, who were ousted from office by this court, are responsible. Finally, respondents aver that they have not any money with which to pay the judgment in question and that they will not have any during the school term of 1933-34 because all the money which will be received will be needed to pay the operating expenses of the school district in order to keep the schools open.

On this state of facts, we are unwilling to adjudge respondents in contempt of court. They are required by law to keep the schools open for a term of 8 months. They have levied all the taxes they are authorized to levy, and the total amount will be required to keep the schools in operation and to make the required payments on bonded indebtedness. If respondents were compelled to pay the judgment in question, then they should also be compelled to pay every other judgment against the school district. The inevitable result would be the closing of the schools for a period of years, while all the tax money would go in discharge of prior debts. Such a course is obviously unthinkable.

"When a judgment is obtained against a school district, an execution cannot be issued for the seizure and sale of its real and personal estates, for this would take from it the schoolhouses, books, and furniture necessary to the maintenance of the schools, and defeat the very purposes for which the district is organized": O'Donnell v. Cass Township School District, 133 Pa. 162, 165. To enforce the payment of the judgments against this school district, upon penalty of imprisonment for contempt of court, would be the same in result as permitting the judgment creditors to seize and sell all the school buildings and other equipment of the school district. It would just as effectually close the schools and defeat the legislative purpose in providing mandamus execution as the exclusive method for collecting judgments against school districts. Between permitting the judgment creditor prompt satisfaction of his claim and closing the schools as the other alternative, we prefer to keep the schools in operation and to defer the payment of the claim until payment will not result in closing the schools: German Township School District v. Sangston, 74 Pa. 454.

We are familiar with some of the reasons for the present deplorable financial condition of this school district. It is unfortunate that just claims cannot be paid without delay, but under the circumstances the creditors of the school district must necessarily wait until the financial condition of the district permits payment of their claims. It should not be necessary to caution the respondents that the responsibility for bringing order out of chaos is theirs and that their management of the school district should be such that every possible economy be practiced, short of impairing the education of the school children in this district, in order that these pending claims may be paid as speedily as possible.

We shall discharge the rule for an attachment, but, since the plaintiff is without fault in the matter, we shall put the costs upon the school district.

And now, January 1, 1934, the rule to show cause why respondents should not be adjudged guilty of contempt of court is discharged, the costs of the rule to be paid by the New Philadelphia School District.

From M. M. Burke, Shenandoah, Pa.